UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IZZO GOLF, INC.,
F/K/A Dancorp Investors, Inc.,

               Plaintiff,

                                       02-CV-6012T
                                       **DECISION**
          v.                              **and ORDER**

KING PAR GOLF INCORPORATED,
d/b/a Knight Golf Company,

               Defendant.

_____

## **INTRODUCTION**

    Plaintiff Izzo Golf, Inc., ("Izzo") brings this action
pursuant to federal patent law, (codified at 35 U.S.C. § 100 et.
seq.), claiming that defendant King Par Golf, Incorporated ("King
Par") has infringed Izzo's United States Patent No. 5,042,704
(filed March 23, 1990)(hereinafter "the '704 patent"), by
manufacturing and selling golf bags with straps for carrying the
bags that infringe upon claims 1, 2, 7, 8, 11 and 14 of the '704
patent.  The '704 patent, entitled "Dual Strap Carrying System for
Golf Bags" generally discloses a strap designed to evenly
distribute the weight of a golf bag across both shoulders of the
person carrying the bag.  The strap system can also be used to
carry a golf bag across only one shoulder.

    On November 30, 2005, a hearing was held by the Honorable
Charles J. Siragusa of this court pursuant to Markman v. Westview
Instruments, Inc., 517 U.S. 370, 372 (1996) for the purpose of

construing the disputed claims of the '704 patent.[1]  In a Decision and Order dated July 26, 2006, Judge Siragusa construed the meaning of the disputed claim terms found in Claims 1, 2, 7, 8, 11, and 14 of the '704 patent.

King Par now moves for summary judgment on the issues of infringement and validity of the patent claiming that there are no material issues of fact in dispute, and that as a matter of law, its golf bags do not infringe upon any of the claims of the '704 patent, and that Claim 14 of the '704 patent is invalid.  For the reasons set forth below, I grant-in part and deny in-part defendant's motion for summary judgment on the issue of infringement, and deny without prejudice defendant's motion for summary judgment on the issue of the validity of Claim 14 of the '704 patent.

## **BACKGROUND**

I.   The Patented Invention

United States Patent 5,042,704 discloses a dual strap carrying system for golf bags.  The crux of the invention is the utilization of two straps to carry the bag across both shoulders, rather than the use of a single strap (as traditionally found on golf bags) to carry the bag over a single shoulder.  By carrying the bag across

---

[1] By Order dated May 10, 2007, the above titled action was transferred to this Court.

both shoulders instead of one, the weight of the bag is more evenly distributed across the entire back of the person carrying the bag, and the person carrying the bag experiences less strain and muscle fatigue which typically occurs when the entire weight of the bag is imbalanced, and borne by only one shoulder.  As stated in the background section of the patent:

> A disadvantage to [the single strap] system . . . results from the fact that the entire weight of the golf clubs and ba[g] . . . strains the muscles of the neck and shoulders unduly and further causes muscular strain resulting from the imbalanced nature of this method of carriage.  Indeed, the imbalance can cause associated muscle soreness in the hips and the lower back due to the fact that the center of gravity of the bag is offset with respect to the spine.  This is of particular concern to those golfers who experience back problems.

'704 Patent at col. 2, lns. 3-15.

Although the strap disclosed in the '704 Patent is designed to be used for carrying a bag over both shoulders, a feature of the invention is that because of its design, it can also be utilized to carry the bag over a single shoulder if the user prefers to carry his or her bags in the more traditional method.  '704 Patent at col. 2, lns. 43-45.  Another important feature of the strap is that because of its design, it can be retro-fitted to work with existing, traditional golf bags.  '704 Patent at col. 2, lns. 32-36.

II.    The Accused Products

There are two types of bags manufactured by the defendant that are in dispute.  The parties have referred to the bags as the "new-style bags" and the "old-style bags."  Illustration 1 below depicts the new-style bag, and Illustration 2 depicts the old-style bag. As can be seen from the illustrations, the new-style bag utilizes a dual-strap that is attached at four locations, two near the open-end of the bag, and two below the handle.  The old style bag also contains four attachment points: one of which is near the open-end of the bag, one at the top of the handle, another at the bottom of the handle, and the final attachment point below the handle.



KING PAR NEW STYLE BAG

KING PAR OLD STYLE BAG

Illustration 1                    Illustration 2

Plaintiff objects that the above illustrations, which were requested from the defendant by the court following briefing of the motion and argument of the motion before Judge Siragusa, on grounds that the perspective chosen for the drawings obscures some of the attachment locations, and that the drawings do not accurately depict how those attachment points can be aligned along an axis. I find, however, that the renderings are fair and accurate depictions of the new and old-style bags.

III. The Asserted Claims of the '704 Patent and Construction of the disputed claim terms.

A.   The Asserted Claims

Izzo contends that King Par is infringing three independent claims of the '704 patent: Claims 1, 8, and 14.  Claim 1 of the '704 discloses:

> In a golf bag adapted to receive a set of golf clubs which each have a club head and an elongated shaft, said golf bag being in the form of an elongated tube including a surrounding sidewall, a closed end and an open end whereby the shafts of said golf clubs may be longitudinally inserted into said golf bag through the open end so that said golf clubs are stored in a position with the club heads projecting out of said golf bag proximate the open end, the improvement comprising a strap assembly adapted to permit a person to carry said golf bag on either or both shoulders, said strap assembly including a single strap comprising a first strap portion including a first central pad, a first strap portion first end attached on one end of said first central pad and a first strap portion second end

attached on another end of said first central pad whereby said first strap portion has a first strap first end secured to said golf bag at a first location proximate said open end and a first strap portion second end secured to said golf bag at a second location axially spaced from the first location so that said first strap portion defines a first strap portion opening, and including a second strap portion including a second central pad, a second strap portion first end attached on one end of said second central pad and a second strap portion second end attached on another end of said second central pad whereby said second strap portion has a second strap portion first end secured to said golf bag proximate the second location and having a second strap portion second end secured to said golf bag at a third location axially spaced from the second location between the second location and said closed end to define a second strap portion opening, said first and second strap portions being sized so that one arm of the person can be inserted through the first strap portion opening and another arm of the person can be inserted through the second strap portion opening whereby said golf bag may be supported by said first strap portion extending across one shoulder of the person and by said second strap portion extending across another shoulder of the person.

While at first glance the language of Claim 1 may appear unduly cumbersome, the claim, in its most basic terms, discloses a dual strap system for carrying a golf bag in which either one or both straps can be used to carry the bag over either shoulder or both shoulders of the person carrying the bag.   As will be discussed further below, the claim also contains a number of limitations defining the scope of the dual strap system.

Claim 8 of the '407 patent discloses:

A golf bag adapted to receive a set of golf clubs for transport by a person, comprising:

an elongated tubular body having a longitudinal axis and including a surrounding sidewall, a closed end and an open end such that golf clubs may be inserted into said tubular body through said open end;

a shoulder strap assembly including first and second shoulder strap elements, said first strap element having a first strap end portion and a first strap element free end opposite said first strap end portion and said second strap element having a second strap element end portion and a second strap element free end opposite said first end portion;

first mounting means on said golf bag at a first location, said first mounting means connected to said first strap element free end for securing said first strap free end to said golf bag at the first location;

second mounting means on said golf bag at a second location axially spaced from the first location, said second mounting means connected to said first and second strap end portions for securing said end portions to said golf bag at the second location;

third mounting means on said golf bag at a third location axially spaced from the second location between the second location and said closed end wherein, said third mounting means secures said second strap element free end to said golf bag at the third location; and

said first and second shoulder strap elements sized to form first and second strap openings respectively when secured whereby the person may selectively carry said golf bag across one shoulder with only said first strap element and selectively carry said golf bag with both shoulders in a fully supported state by inserting his/her arms respectively through the first and second strap openings so that said golf bag is suspended from and supported by both shoulders with said golf bag oriented transversely across the back of the person.

Finally, Claim 14 of the '704 patent discloses:

> In a golf bag to be carried by a person, a golf bag having an elongated enclosure including a surrounding sidewall, a closed end and an open end whereby golf clubs may be inserted lengthwise into said golf bag through the open end, the improvement comprising:
>
> a shoulder strap assembly disposed externally of said sidewall including first and second strap members, each of said strap members having opposite ends;
>
> first and second securing means for securing each of said opposite ends of said first strap member to longitudinally spaced locations on said sidewall including a first location proximate said open end and a second location longitudinally spaced from said first location whereby said first strap member defines a first strap opening through which one arm of the person can be inserted; and third and fourth securing means for securing each of said opposite ends of said second strap member to longitudinally spaced locations on said sidewall to define a second strap opening that another arm of the person can be inserted through said second strap opening whereby said golf bag can be selectively supported on one shoulder by said first strap member to incline downwardly across the back of the person carrying said golf bag and can be selectively supported on both shoulders by said first and second strap members with said golf bag extending transversely across the back of the person carrying said golf bag.

B.   <u>Construction of the Disputed Terms of the '704 Patent</u>.

Pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996) ("<u>Markman</u>"), the parties requested that the court construe the disputed claim terms of the asserted claims.   On

November 30, 2005, the Honorable Charles Siragusa held a <u>Markman</u> hearing at which the parties set forth their respective positions as to how the claim terms at issue should be construed, and thereafter, on July 26, 2006, Judge Siragusa issued a Decision and Order construing the disputed claim terms (hereinafter "the <u>Markman</u> Ruling").

With respect to the disputed term "end" or "strap end," Judge Siragusa defined that term as "the point where one designated section of strap ends and another begins." <u>Markman</u> Ruling at pp. 13-14. A strap end need not be affixed directly to the golf bag. <u>Id.</u> The term "secured to said golf bag" was defined by Judge Siragusa as meaning that "a strap end is attached to the outer surface of the golf bag by a securing means." <u>Markman</u> Ruling at p. 15. According to Judge Siragusa's construction, a "securing means" is "any means used to secure a strap to a golf bag disclosed in the specification, i.e., rings, clips, straps, and any equivalents thereof." <u>Markman</u> Ruling at p. 14. A "strap opening" is defined as "an opening for the arm of a user, formed by a section of strap as it extends from one securing point to another." <u>Markman</u> Ruling at p. 15.

Two additional terms were construed by Judge Siragusa in his <u>Markman</u> Ruling. Judge Siragusa defined the term "axially spaced" as referring to objects that are "located on, or around, or in the direction of an axis." <u>Markman</u> Ruling at p. 11. In so holding,

Judge Siragusa specifically explained that the term "axially spaced" does not apply to "attachment points that are permanently circumferentially offset, such that they are incapable of being axially aligned." <u>Markman</u> Ruling at p. 12.  Judge Siragusa further held that the term "longitudinally spaced" attachment points, as used in Claim 14, had a meaning distinct from the term "axially spaced" attachment points, and referred to attachment points that are "spaced lengthwise along the golf bag, without regard to being positioned in relation to an axis."  <u>Markman</u> Ruling at p. 13.

## **<u>DISCUSSION</u>**

### I. <u>Defendant's Motion for Summary Judgment</u>

Based on the court's construction of the disputed Claims of the '704 patent, King Par moves for summary judgment on grounds that its golf bags and straps do not infringe the '704 patent, and that Claim 14 of the '704 Patent is invalid.   Although normally the question of whether or not a product infringes on a patent is a question of fact to be determined by the trier of fact, where there are no relevant facts in dispute, the question of literal infringement collapses into one of claim construction, "and is thus amenable to summary judgment."  <u>Athletic Alternatives, Inc. v. Prince Mfg., Inc.</u>, 73 F.3d 1573, 1578 (Fed. Cir. 1996).  <u>See also</u> <u>Warner-Jenkinson Co. v. Hilton Davis Chemical Co.</u>, 520 U.S. 17, 39

n. 8 (1997)(summary judgment also appropriate on issue of infringement under the doctrine of equivalents).

Izzo opposes defendant's motion and argues, <u>inter alia</u>, that because every element of the applicable disputed claims is present in the accused devices, the King Par bags infringe the '704 patent. Izzo also contends that defendant's motion must be denied because defendant has failed to support its motion with admissible evidence upon which a motion for summary judgment could be granted. In support of this contention, plaintiff argues that King Par: (1) has failed to submit expert testimony on the issue of infringement; (2) has submitted unauthenticated exemplars of purported King Par bags preventing the court from comparing the accused King Par bags to the '704 Patent; and (3) relies on attorney affidavits in violation of Rule 56(e) of the Federal Rules of Civil Procedure which provides that affidavits in support of or opposition to a motion for summary judgment must be made on personal knowledge.

I find however, that defendant's motion is adequately supported by admissible evidence, and does not unduly rely on attorney affidavits. Defendant has submitted actual golf bags to the court representing the accused products. Plaintiff has had an opportunity to inspect these bags and object to them as not being representative of the accused bags, and no such objection has been made. Further, plaintiff has not objected that the bags submitted to the court do not represent all of the accused products.

Accordingly, I find that the bags submitted to the court constitute admissible evidence, and are accurate and complete examples of the accused King Par products.

Moreover, I find that defendant is not required to submit expert testimony on the issue of infringement in this case. While expert testimony may be particularly useful to the court for purposes of determining the meaning of disputed claims, the state of the art in the field of the invention, and the level of ordinary skill in a particular art, in cases where the art at issue is not highly technical, the Federal Circuit Court of Appeals has "never required a party to proffer expert testimony on claim interpretation or on the application of claim language to accused devices." Moleculon Research Corporation v. CBS, INC., 793 F.2d 1261, 1270 (Fed. Cir. 1986)(emphasis in the original)(dismissing argument that expert testimony was necessary to determine infringement issues with respect to the popular "Rubik's Cube" puzzle game as "border[ing] on the frivolous.")

II.   The "New Style" King Par Golf Bag does not infringe the '704 patent.

Generally, an accused product will be found to infringe upon a patent if "each properly construed claim element reads on the accused product or process." Herbert F. Schwartz, Patent Law and Practice 167 (5th ed. 2006). If a claim is expressed in means-plus-function language, literal infringement occurs "only when the

accused product (a) employs means identical to the means disclosed in the patent's specification to perform the identical function of the claim or element or (b) employs means that is the structural equivalent to the means disclosed in the patent's specification to perform the identical function of the claim element."  Schwartz, Patent Law and Practice at 168 (citing Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.3d 1370, 1376, (Fed. Cir. 2004)).

In cases where an accused product does not literally infringe upon a patent claim, infringement may still be found under the doctrine of equivalents.  "An accused product that does not literally infringe a claim may infringe under the doctrine of equivalents if `it performs substantially the same function in substantially the same way to obtain the same result.'" Southwall Technologies v. Cardinal IG Co., 54 F.3d 1570, 1579 (quoting Graver Tank & Manufacturing Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 608 (1950)).

In the instant case, plaintiff contend that the defendant's new-style bag infringes the '704 patent both literally and under the doctrine of equivalents.  I find, however, that the new-style bag lacks several key elements of the '704 patent, and therefore does not infringe any claims of the '704 patent.

A.   Claim 1 of the '704 Patent

Based on Judge Siragusa's claim construction, Claim 1 of the '704 Patent requires a strap assembly comprised of two strap portions.  The first strap portion is comprised of three elements: a central pad and two strap ends.  The first of the three elements is a "central pad."  Attached to one end of the central pad is a strap end known as the "first end" of the strap portion.  Attached to the opposite end of the central pad is a strap end known as the "second end" of the first strap portion.  The first end of the first strap portion is secured to the golf bag at a location near the open end of the bag, and the second end of the first strap portion is secured to the bag at a second location that is "axially spaced" from the first location.  The strap portion, as attached, defines a "strap opening" through which a user's arm can extend, and the strap and pad can be rested upon the users shoulder.

Similar to the first strap portion, the second strap portion is comprised of three elements: a central pad and two strap ends.  Just as with the first strap portion, attached to the central pad of the second strap portion is a strap end known as the "first end" of the second strap portion.  Attached to the opposite end of the central pad is a strap end known as the "second end" of the second strap portion.  The first end of the second strap portion is attached to the golf bag at a location that must be "proximate" the second attachment location.  The second end of the second strap

portion is secured to the bag at a third location that is "axially spaced" from the second location, between the second location and the closed end of the bag.  The second strap portion, as attached, defines a second "strap opening" through which a user's arm can extend, and the strap and pad can be rested upon a user's shoulder.

Because the drafters of the '704 patent choose to use similar-sounding terms for different elements of the disclosed invention (i.e. "first strap portion first end, first strap portion second end, second strap portion first end, second strap portion second end), the patent claims can, at first glance, appear confusing. For purposes of clarity, I shall refer to the "first strap portion, first end" as used in the '704 Patent and as found in the King Par bags as "End A."  The first strap portion, second end shall be referred to as "End B."  The second strap portion, first end, shall be referred to as "End C," and the second strap portion, second end, shall be referred to as "End D."

As can be seen from Illustration 3 below, (which is taken from Figure 2 of the '704 Patent), each strap has two ends. Although Ends A and B are not labeled in Figure 2, Ends C and D are labeled as Items 54 and 56 respectively.  Item no. 54 in Figure 2 of the '704 Patent is described as the "second end ... of [the] first strap." '704 Patent at c. 6, l. 10.   Item no. 56 is described as the "first end" of the "second strap."  '704 Patent at c. 6, lns 13-14.



Illustration 3


As can be seen in Illustration 4 below, (which is taken from Figures 3 and 4 of the '704 Patent), Ends A and B are depicted in Figures 3 and 4 as items 52 and 58 respectively. Figure 3 is a side view of the top portion of the golf bag, and Figure 4 is a side view of the mid-portion of the bag. Item no. 52 in Figure 3 of the '704 Patent is described as the "first strap first end." '704 Patent at c. 6, lns. 7-8. Item no. 58 is described as the "second end" of the "second Strap." '704 Patent at c. 6, lns. 15-16. Figure 3 of the '704 Patent also depicts Ends B and C, which are labeled as items 54 and 56 respectively.



Illustration 4

The accused King Par new-style bag does not infringe upon Claim 1 of the '704 patent because the new-style bag does not employ a "first strap portion second end [End B] secured to said golf bag at a second location that is axially spaced from the first location" as required by Claim 1, and also does not employ a "second strap portion first end [End C] secured to said golf bag proximate the second [attachment] location and having a second strap portion second end [End D] secured to said golf bag at a

third location axially spaced from the second [attachment] location between the second location and said closed end [of the golf bag] . . ." '704 patent at cl. 15, lns. 23-25, 31-37.   Instead, the new-style King Par bag: (1) utilizes a "first strap portion second end" (End B) that is attached to the bag in a location that is <u>not axially spaced from the attachment point for End A</u> and (2) utilizes a "second strap portion first end" (End C) that is secured to the golf bag in a location that <u>is not proximate the second attachment location</u>.

    1.    The attachment point of End B of the King Par new-style bag is not axially spaced from the attachment point for <u>End A</u>

As shown in illustration 5, the new-style King Par Bag utilizes four attachment points to attach the four ends of the two straps to the golf bag.



Illustration 5

The first end of the first strap (End A) is attached to the bag near the open end of the bag.  The second end of the first strap (End B) is also attached to the bag near the open end of the bag on a horizontal plane.  Because End B is attached in a location that is the same distance vertically from the open end of the bag as End A, End B is horizontally spaced from End A–not "axially spaced" as required by the '704 patent.  This is true because the patent discloses that the "axis" upon which the second attachment location must lie is a vertical axis, not a horizontal axis.  As stated in the specification, "the invention . . . broadly includes a pair of straps which are connected to and oriented <u>longitudinally along a golf bag to define an attachment axis</u>."  '704 Patent at Cl. 5, lns 37-41.  Because Ends A and B of the new-style King Par bag do not lie along a vertical or longitudinal axis, the King Par bag does not practice the requirement of Claim 1 of the '704 patent that the attachment points of the first strap first end and first strap second end be "axially spaced."

2.    The Attachment point of End C of the King Par new-style <u>bag is not proximate the attachment point of End B</u>

The new-style King Par bag utilizes four attachment points to secure the ends of the two carrying straps.  As seen in Illustration 5, the ends of the first strap are attached near the open end of the bag along a horizontal plane.  The ends of the second strap, Ends C and D, are attached approximately mid-way between the open and closed ends of the bag, below the bag's

handle.  As a result of this configuration, the first end of the second strap (End C) is attached at a location that is farther away than any other attachment point from the attachment point for the second end of the first strap (End B).  Accordingly, the attachment point of End C is not proximate the attachment point of  End B, and therefore does not practice the requirement of the '704 patent that the first end of the second strap portion be near the second attachment point.  Indeed, Ends B and C could not be attached at locations any more distant from each other.  I therefore find that the new-style King Par bag does not utilize a second strap portion first end that is secured to the golf bag proximate the second attachment location.

Plaintiff contends that the attachment points of the King Par bag are capable of being aligned along an axis because the attachment points are not the locations where the straps are secured to the sidewall of the bag, but instead are the points where the strap is connected to the pad.  Plaintiff argues that when the attachment points are considered to be the points where the straps are connected to the pad – and not the bag, the attachment points are capable of being aligned on an axis, and axially spaced.  This characterization of the attachment points, however, has no basis in the '704 Patent itself, but instead appears to be a post hoc argument made to conform plaintiff's infringement allegations with  Judge Siragusa's <u>Markman</u> Ruling.

The attachment axis that is required by Claims 1 and 8 of the '704 Patent is a longitudinal axis that exists along the outer edge of the golf bag and which is defined by the attachment locations. '704 Patent at cl. 6, lns 19-20.  As can be seen in Illustration 3 above the attachment axis (marked with the letter "A") is clearly depicted in the Figure 2 of the '704 Patent, and is a fixed line along the bag that serves as a reference point for the location of other features of the bag.[2]  For example, the '704 Patent describes a pillow feature that is circumferentially offset 90 degrees from the attachment axis.   '704 Patent at cl. 3 lns 59-61. Additionally, a wedge-shaped structure that is used to prevent clubs from slipping out of the bag is attached in the open end of the bag "diametrically opposite axis A".   '704 Patent at cl. 6, lns 20-24.  Slits in the covering of the bag are circumferentially offset from the attachment axis.   '704 Patent at cl. 6, lns 53-55.

If the attachment axis were, as plaintiff claims, above the bag at the location where the straps meet that pad, then the axis line would not be in a fixed location, but instead would be constantly changing depending on how the straps were held, and indeed, would vanish when the bag is in use - as it would be impossible to align the attachment points on any single axis.

---

[2] While the attachment points themselves need not be fixed (as in the case of the preferred embodiment in which attachment points of the strap are tethered to mounting device on the bag, the axis line is fixed along the spine of the bag.

Nowhere in the '704 patent is it suggested that the axis line exists in a varying location somewhere above the bag, and is capable of vanishing when the strap is used as intended.  Indeed if the axis line did reside above the bag in an unspecified location that is subject to change with every movement of the straps, then the location of those parts of the bag (such as the pillow, the wedge-shaped structure preventing clubs from falling out of the bag, and the slits in the covering) that are located with reference to the axis line, could not be reliably determined.

Further, the contention that a strap end is located where the strap meets the pad is without support in the '704 Patent. Plaintiff attempts to characterize the cushioned pad of the King Par bag as constituting the two straps disclosed in the '704 Patent, and contends that the straps emanating from the pads of the King Par bag are "securing means" rather than strap ends.  Such a characterization, however, is at odds with the teachings of the '704 Patent.

Claim 1 of the '704 patent teaches that a "strap" <u>includes</u> a central pad.  '704 Patent at cl. 15 lns 16-18.  According to the Claim, a single strap is comprised of "a first strap portion <u>including</u> a first central pad . . . ."  <u>Id.</u> (emphasis added) The Claim further states that the first end of the first strap portion is "attached on one end of said first central pad, and a first strap portion second end [is] attached on another end of said first

central pad . . . ." <u>Id.</u> lns. 18-21.  Thus according to the plain language of Claim 1, a strap is <u>comprised</u> of two ends that are attached to a central pad.  Further, it is these strap ends that themselves are secured (via a securing means that may include clips, hooks or straps) to the golf bag at specified locations. <u>Id.</u> at lns. 22-25.

Because the patent requires that the pad have strap ends attached to it, and because the patent specifies that the pad is merely one component of an entire strap, plaintiff's characterization of the pad of the King Par new style bag as constituting the entire strap is without basis.  Such a reading ignores the definition of a strap as set forth in the Patent.

Additionally, pursuant to the teachings of the '704 patent, each strap of the strap system defines a strap opening through which a user may insert his arm and hoist the bag across his or her shoulder for carrying.  Yet under plaintiff's characterization of the pad as comprising the whole of the strap, there is no such functional strap opening.  Further, because the patent does not disclose a strap opening that is defined by the strap ends in combination with the securing means, only the strap itself may be considered when determining the strap opening. <u>See</u> <u>e.g.</u> '704 Patent at c. 7, lns. 19-35 (the "first strap . . . is secured at a first location proximate the open end . . . of [the] golf bag . . . and at a second location longitudinally spaced from the first location

so <u>that [the] first strap . . . defines a first strap opening . . .</u> <u>. sized to accommodate one of the shoulders of a person who seeks</u> <u>to carrying [sic] [the] golf bag . . . .</u>") Because plaintiff's characterization of the pad as a strap does not account for the requirement that the strap define a strap opening, I decline to consider the pad to be the entire strap.

B.   <u>Claim 8 of the '704 Patent</u>

Like Claim 1 of the '704 patent, Claim 8 of the '704 patent claims a dual strap system for carrying a golf bag.  Claim 8, however, uses slightly different language in describing the straps. Whereas Claim 1 referred to each strap as a "strap portion," Claim 8 refers to the straps as "strap elements."  '704 Patent c. 16, lns. 16-17.   Moreover, whereas Claim 1 referred to each strap portion as having a first and second end, Claim 8 refers to each strap element as having an "end portion" and "free end."  '704 Patent c. 16, lns. 17-22.

Despite the difference in nomenclature, Claim 8, like Claim 1, requires that the four ends of the strap elements be attached to the golf bag in a specific manner.  Accordingly, the four ends can continue to be referred to as Ends A, B, C, and D.  As used in Claim 8, the "first strap element free end" corresponds to End A. The "first strap end portion" corresponds to End B.  The "second strap end portion" corresponds to End C, and the second strap element free end refers to End D.

In accordance with Judge Siragusa's claim construction, Claim 8 of the '704 patent requires the use of a first mounting means for mounting the first strap element free end (End A) to the golf bag at an unspecified location.  Unlike Claim 1, Claim 8 does not require that End A be secured to the bag at a location proximate the open end of the bag.  A second mounting means is attached to the bag at a location that is axially spaced from the first location.  The first strap end (End B) and second strap end (End C) are attached to the second mounting means.  Finally, a third mounting means is attached to the bag at a position that is located between the attachment location for the second mounting means and the closed end of the bag, and is axially spaced from the second attachment location.  The second strap element free end (End D) is attached to the third mounting area.

For the reasons set forth below, I find that the King Par new-style bag does not practice three elements of Claim 8 of the '704 patent.  First, unlike the requirement of Claim 8 that the ends of the first and second straps be attached to a second mounting means, the King Par new-style bag does not utilize any single mounting means to which the ends of the first and second straps are attached.  Second, the new-style bag does not utilize a second mounting means that is axially spaced from the first mounting means as required by Claim 8 of the '704 Patent.  Finally, the new-style

bag employs four mounting means instead of the three mounting means as required by Claim 8.

> 1. The new-style King Par bag does not utilize a second mounting means to which first and second strap ends are <u>attached</u>.

Claim 8 of the '704 patent requires that Ends B and C be connected to a second mounting means. The new-style King Par bag, however, does not utilize any single mounting means to which two strap ends are attached. Rather, all four strap ends are connected to separate mounting means. Accordingly, the new-style King Par bag does not practice the claim that strap ends B and C be attached to a second mounting means.

Even if the court were to consider the two lower mounting means (to which strap ends C and D are attached) of the new-style King Par bag as a *single* mounting means, the King Par bag does not practice the claim disclosed in Claim 8 because according to that Claim, the end portions of the first and second straps (Ends B and C) must be attached to the second mounting means. In the King Par bag, however, the two ends of the second strap (Ends C and D) are attached to the lower mounting means. See Illustration 5 above. Accordingly, even if the lower mounting means were considered to be a single mounting means (which it is not) the King Par bag still doesn't infringe because only the ends of the second strap are attached: not the ends of the first and second strap as set forth in Claim 8.

2.   The new-style King Par Bag does not utilize a second mounting means that is axially spaced from the first <u>mounting means</u>.

Because the new-style King Par bag does not utilize a second mounting means to which strap ends B and C are attached, the new-style bag does not practice the claim limitation that the second mounting means be axially spaced between the first mounting means and the closed end of the bag.  Because the King Par bag uses two separate locations for the attachment of Ends B and C to the bag, there are two possible locations that could be considered the location of the second mounting means on the new-style King Par bag.  End B is attached at a location that is horizontally spaced from the attachment point of End A.  End C is attached between the End A and the closed end of the bag, but is longitudinally spaced from End A—not axially spaced as required by Claim 8.

Although End C is attached at a location that is between End A and the closed end of the bag, because the attachment points for Ends A and C are permanently affixed to the bag, and because they are on opposite sides of the central axis line that bisects the bag, those attachment points are not axially spaced.  As stated by Judge Siragusa in his <u>Markman</u> ruling, the term "axially spaced" does "not apply to attachment points that are permanently circumferentially offset, such that they are incapable of being axially aligned."  <u>Markman</u> Ruling at p. 12.  In so holding, Judge Siragusa distinguished between attachment points that were attached

in a fixed location to the bag (such as the attachment points of the King Par new-style bag, and attachment points(as disclosed in the '704 Patent) that are tethered along a horizontal axis, rendering the attachment points moveable, and when positioned correctly, capable of coming into axial alignment with other attachment points.  Because the new-style King Par bags do not utilize attachment points to which the ends of the two straps are tethered, and because the attachment points of Ends A and C are not axially aligned, the bags do not employ a second mounting means that is axially spaced from the first mounting means.

     3.   <u>The new-style King Par bag utilizes four mounting means</u>.

     Claim 8 of the '704 patent discloses the use of a first mounting means to which End A is attached, a second mounting means to which Ends B and C are attached, and a third mounting means to which End D is attached.  As disclosed, the four ends of the two straps are secured by three-and only three-securing means.

     The new-style King Par bag, however, utilizes four securing means, to which each end of a strap is attached.  See Illustration 5 above.  Because the new-style bag uses four, and not three, means for securing the ends, the bag does not practice the invention disclosed in Claim 8 of the '704 patent.

C.   Claim 14 of the '704 Patent

Like Claims 1 and 8 of the '704 patent, Claim 14 of the '704 patent claims a dual strap system for carrying a golf bag.  Claim 14, however, does not require the use of attachment points that are axially spaced.  Rather, Claim 14 discloses the use of attachment points that are longitudinally spaced.  Longitudinally spaced attachment points are points that are "spaced lengthwise along the golf bag, without regard to being positioned in relation to an axis." Markman Ruling at p. 13.

Claim 14, just as with Claims 1 and 8, discloses the use of two straps, with each strap having an end for a total of four strap ends.  Unlike Claims 1 and 8, in which each of the four strap ends was assigned a different and uniquely identifying name, Claim 14 does not differentiate between each end of the strap, and instead refers to each end simply as an "end."  The Claim does require, however, that the two ends of each strap define a "strap opening" which is the open space through which a user's arm is inserted for purposes of picking up and carrying the bag in its intended manner.

Accordingly, the four ends of the two straps described in Claim 14 can continue to be referred to as Ends A, B, C, and D.  As used in Claim 14, strap one contains two strap ends - Ends A and B.  Either End A or B may be attached to a first securing means, which must be located proximate the open-end of the golf bag.  The other End (either End A or End B) must be attached to a second securing

means that is longitudinally spaced between the first attachment location and the closed end of the bag.  The second strap also contains two strap ends - Ends C and D.  Ends C and D must be attached to the bag via two separate securing means that are longitudinally spaced from each other.  Unlike the securing means used to secure the first strap, there is no requirement that either of the securing means used to secure the second strap to the bag be proximate the open end.

For the reasons set forth below, I find that the new-style King Par bag does not infringe upon Claim 14 of the '704 patent. The new-style bag does not employ a second securing means that is longitudinally spaced from the first securing means as required by Claim 14, and does not employ third and fourth securing means that are longitudinally spaced from one another.

    1.    The new-style King Par bag does not employ a second means for securing the first strap that is longitudinally <u>spaced from the location of the first securing means</u>.

As stated above, Claim 14 requires that the securing means for the ends of strap one be longitudinally spaced from one another. However, as I have previously discussed, in the King Par new-style bag, the ends of strap one (which define the first strap opening) are attached on a horizontal plane, and are not longitudinally spaced from one another.  See Illustration 5 above.  Accordingly, the King Par bag does not utilize securing means that are

longitudinally spaced for attaching the ends of strap one to the bag.

2.   The new-style King Par bag does not employ third and fourth means for securing the second strap that are <u>longitudinally spaced from one another</u>.

Claim 14 of the '704 patent requires that the two securing means used to hold either of the two ends of the second strap be longitudinally spaced.   The new-style King Par bag, however, utilizes two means for securing the ends of the second strap that are horizontally spaced.   See Illustration 5 above.   Accordingly, the new-style bag does not practice the limitation that securing means three and four  be longitudinally spaced from each other.

In plaintiff's opposition to defendant's motion for summary judgment, the plaintiff contends that the new-style bag infringes upon Claim 14 of the '704 Patent because the ends of each strap member are attached in a way to make them "longitudinally spaced." To make this argument, plaintiff labels Ends A and C as the ends of the first strap, and Ends B and D as the ends of the second strap. By labeling the ends as such, the attachment points are indeed longitudinally spaced.

This characterization of the strap ends, however, is fundamentally flawed.   As required by the language of Claim 14 itself, the ends of each strap define a strap opening through which the arm of the user can be inserted.   Because the ends of each strap <u>must</u> define the strap opening, neither the plaintiff nor any

other party may simply characterize any pair of the four ends of the two straps as being the ends of a single strap. Instead, only those ends which define a strap opening can be considered the ends of a single strap. With respect to the new-style King Par bag, only Ends A and B, and C and D respectively, form strap openings. Ends A and C do not form a strap opening because the user's arm and shoulder do not fit between those strap ends. Instead, the arm and shoulder fits between strap Ends A and B. Moreover, if strap ends A and C did define a strap opening, it would be literally impossible for a user to fit his arm between strap ends B and D, and therefore Ends B and D, by definition, can not be the ends of a single strap because they cannot define a strap opening.

B.   The New-Style King Par Bag Does not infringe the '704 Patent under the doctrine of Equivalents.

Defendant contends that its new style bag does not infringe the '704 Patent either literally or under the doctrine of equivalents. "An accused product that does not literally infringe a claim may infringe under the doctrine of equivalents if `it performs substantially the same function in substantially the same way to obtain the same result.'" Southwall Technologies, 54 F.3d at 1579 (quoting Graver Tank & Manufacturing Co., 339 U.S. at 608).

The new-style bag performs essentially the same function as the strap and bag disclosed in the '704 Patent, that is, it allows the user of the bag to carry the bag using either two straps over

both shoulders or by using one strap over one shoulder.  The new-style King Par bag, however, accomplishes this task by utilizing two straps with ends that are horizontally aligned, rather than longitudinally or axially aligned straps as required by the '704 Patent.  Accordingly, I find that the function of carrying the new-style bag using either or both of the straps is accomplished in a different manner than the method and apparatus disclosed in the '704 Patent.  Moreover, horizontally aligned attachment points can not be deemed equivalent for purposes of infringement analysis to axially or longitudinally spaced attachment points because such an interpretation would vitiate the axially or longitudinally spaced requirements.   Where "a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment [in favor of the alleged infringer] should be rendered by the court as there would be no material issue for the jury to resolve." Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 39, n. 8. (1997).  In this case the requirement that the attachment points be axially or longitudinally spaced would be rendered meaningless if attachment points that were horizontally spaced could be considered infringing.

III. **The Old Style King Par Bag infringes claims 1, 2, 7 and 14 of the '704 Patent.**

The old-style King Par bag is significantly different from the new-style bag. Although both bags employ four attachment points for attachment of the strap ends to the bag, the old-style bag utilizes four attachment points that are aligned along the spine of the bag in a longitudinal array. See Illustration 2 above. Moreover, unlike the new-style bag, in which one strap is attached to the top of the bag and the other strap is attached towards the middle of the bag, the old-style bag employs the use of attachment points in which the bottom of the top strap and the top of the bottom strap are both attached to the handle of the bag. As can be seen from the Illustration 6, the four strap ends of the old-style bag can be labeled Ends A, B, C, and D. Ends A and B form a strap opening, as do Ends C and D.



Illustration 6

A.   The Old-Style King Par Bag infringes upon Claim 1 of
     the '704 Patent

     As stated above, Claim 1 of the '704 Patent requires a strap
assembly comprised of two strap portions.   Each strap portion has
two strap ends.   The first end of the first strap portion is
secured to the golf bag at a location near the open end of the bag,
and the second end of the first strap portion is secured to the bag
at a second location that is "axially spaced" from the first
location.   The strap portion, as attached, defines a "strap
opening" through which a user's arm can extend, and the strap and
pad can be rested upon the users shoulder.   The first end of the
second strap portion is attached to the golf bag at a location that
must be "proximate" the second attachment location.   The second
end of the second strap portion is secured to the bag at a third
location that is "axially spaced" from the second location, between
the second location and the closed end of the bag.   The second
strap portion, as attached, defines a second "strap opening"
through which a user's arm can extend, and the strap and pad can be
rested upon a user's shoulder.

     Based on the limitations set forth in Claim 1, I find that the
old-style bag infringes Claim 1 of the '704 Patent.   The old-style
bag employs (as disclosed in Claim 1) a first strap end (End A)
that is secured to a first location that is proximate the open end
of the bag; a first strap second end (End B) that is attached to a
location that is axially spaced from the first location and which,

in combination with End A, forms a strap opening; a second strap first end (End C) that is attached at a location proximate to the location of the attachment point for End B; and a second strap second end (End D) that is attached to the bag at a fourth location that is axially spaced between the second attachment location and the closed end of the bag.

The fact that the old-style bag utilizes four attachment points instead of three as disclosed in Claim 1 of the '704 Patent is not material for purposes of infringement.  As set forth in Claim 1, the first end of the second strap (End C) need only be attached to a location that is proximate the attachment location for the first strap second end (End B).  In the case of the old-style bag, the attachment locations of Ends B and C, though separate, are proximate one another, with both being attached to the handle of the bag.  This configuration reads on the limitation that the second strap first end be attached at a location proximate the first strap second end.  Because the old-style King Par bag reads on all of the limitations of Claim 1 of the '704 Patent, I find that the old-style bag infringes upon Claim 1.

    B.   The Old-Style King Par Bag infringes upon Claim 2 of the '704 Patent

Claim 2 of the '704 Patent discloses:

> The improvement according to claim 1 wherein said first and second central pads are arcuate in configuration so that, when said golf bag is supported, each of said central pads extends upwardly from the second location,

> forwardly across the shoulders of the person, downwardly and outwardly from the shoulders and then rearwardly to the first and third locations respectively.

'704 Patent at cl. 15 lns 46-53.

I find that the old-style King Par bag infringes claim 2 of the '704 Patent.  The pads of the strap are arcuate in shape, and extend upwardly from the second attachment location, forwardly across the user's shoulders, and downwardly and outwardly from the shoulders to the attachment locations.  Accordingly, the old-style bag infringes upon Claim 2 of the '704 Patent.

C.   The Old-Style King Par Bag infringes upon Claim 1 of the '704 Patent

Claim 7 of the '704 Patent discloses:

> The improvement according to claim 1 wherein one of said first and second central pads has a covering that is constructed of material that resists sliding with respect to clothing of a person.

The evidence of record is insufficient for the Court to make a determination as to whether or not the King Par old-style bag utilizes first and second pads that are covered with material that resists sliding when worn over clothing.  There is no evidence in the record with respect to the composition of material used to cover the pads, or the manner in which it is affixed to the pads.  Accordingly, I decline to grant or deny defendant's motion with respect to this claim.

      D.    The Old-Style Bag does not infringe upon Claim 8 of the <u>'704 Patent</u>.

As stated above, based on Judge Siragusa's construction of the disputed terms of the '704 Patent, Claim 8 of the '704 Patent requires the use of a first mounting means for mounting the first strap element free end (End A) to the golf bag at an unspecified location. Unlike Claim 1, Claim 8 does not require that End A be secured to the bag at a location proximate the open end of the bag. A second mounting means is attached to the bag at a location that is axially spaced from the first location. The first strap end (End B) and second strap end (End C) are attached to the second mounting means. Finally, a third mounting means is attached to the bag at a position that is located between the attachment location for the second mounting means and the closed end of the bag, and is axially spaced from the second attachment location. The second strap element free end (End D) is attached to the third mounting area.

Unlike Claim 1 of the '704 Patent (which requires that End C be attached at a location <u>proximate</u> End B), Claim 8 specifies that End C must be connected to the same mounting means as End B. Specifically, the patent claims a "second mounting means on said golf bag . . . connected to said first and second strap end portions for securing said end portions to said golf bag at the second location . . . ." '704 Patent at c. 16, lns. 27-31. Because the old-style bag utilizes separate means for attaching

Ends B and C, those ends are not attached to the bag by use of a single mounting means as required by Claim 8.  Accordingly, I find that the old-style bag does not infringe upon Claim 8 of the '704 Patent.

E.   The Old-Style Bag does not infringe upon Claim 11 of the '704 Patent

Claim 11 of the '704 Patent discloses "[a] golf bag according to claim 8, wherein said first, second and third mounting means include means for releasably connecting said strap elements to said first, second, and third locations, respectively."  '704 Patent at c. 16, lns. 57-60.  Because the old-style bag does not practice the limitations set forth in Claim 8 of the '704 patent, I find that the old-style bag does not infringe upon Claim 11 of the '704 Patent.

F.   The Old-Style King Par Bag infringes on Claim 14 of the '704 Patent.

As stated above, Claim 14 of the '704 patent, like Claims 1 and 8, claims a dual strap system for carrying a golf bag.  Claim 14, however, does not require the use of attachment points that are axially spaced.  Rather, Claim 14 discloses the use of attachment points that are longitudinally spaced.  Longitudinally spaced attachment points are points that are "spaced lengthwise along the golf bag, without regard to being positioned in relation to an axis."  Markman Ruling at p. 13.  Although longitudinally spaced attachment points may be axially aligned, they are not required to

be axially aligned, as are the attachment points claimed in Claims 1 and 8.

Claim 14 discloses the use of two straps, with each strap having an end for a total of four strap ends. Claim 14 does not differentiate between each end of the strap, and instead refers to each end simply as an "end." The Claim does require, however, that the two ends of each strap define a "strap opening" which is the open space through which a user's arm is inserted for purposes of picking up and carrying the bag in its intended manner.

One end of the first strap must be attached to a first securing means which must be located proximate the open-end of the golf bag. The other end of the first strap must be attached to a second securing means that is longitudinally spaced between the first attachment location and the closed end of the bag. The second strap must be attached to the bag via two separate securing means that are longitudinally spaced from each other.

I find that the old-style bag infringes on Claim 14 of the '704 patent. The old-style bag utilizes a first strap with an end attached at a location proximate the open end of the bag, and a second end attached at a location that is longitudinally spaced from the first location. The second strap is attached to the bag using two attachment locations that are longitudinally spaced from one another. Accordingly, because the old-style bag practices the

limitations set forth in Claim 14 of the '704 Patent, I find that the old-style bag infringes on that Claim.

IV.   <u>Validity of Claim 14 of the '704 Patent</u>.

A.   Defendant has failed to establish that Claim 14 of the _____ <u>'704 Patent is Anticipated by prior art</u>.

Defendant contends that Claim 14 of the '704 Patent is invalid because it is anticipated by several prior-art references. Pursuant to 35 U.S.C. § 102, a patent claim may be determined to be invalid it the invention disclosed in the claim is anticipated by prior art.   A claim is "anticipated" if a single prior-art reference "discloses each and every limitation of the claimed invention." <u>Schering Corp v. Geneva Pharm., Inc.</u>, 339 F.3d 1373, 1377 (Fed. Cir. 2003).   Whether or not a claim is anticipated by prior art is a question of fact.   <u>Eaton Corp. v. Rockwell International Corp.</u>, 323 F.3d 1332 (Fed. Cir. 2003).   However, where there are no material facts in dispute, the issue of validity may be resolved on motion for summary judgement.   <u>See</u> <u>Key Pharmaceuticals v. Hercon Laboratories Corp.</u>, 161 F.3d 709, 714 (Fed. Cir. 1998)(claims of anticipation amenable to summary judgment where there are no material issues of fact in dispute).

Although patents issued by the patent office are presumed to be valid. <u>Ruiz v. A.B. Chance Co.</u>, 234 F.3d 654, 662 (Fed. Cir. 2000), the presumption of validity may be overcome where the party seeking to invalidate a patent presents clear and convincing evidence that the patent is invalid. <u>Al-Site Corp. v. VSI Int'l</u>,

Inc., 174 F.3d 1308, 1323 (Fed. Cir. 1999).  In determining whether or not a patent claim is anticipated in light of prior art, the court must first construe the claims of the patent at issue, and then compare the construed claims to the prior art.  Key Pharmaceuticals, 161 F.3d at 715.  Anticipation analysis is similar to infringement analysis in that art which would infringe on a patent claim if it appeared after a patent was issued will anticipate a claim if the art predates the patent.  Aerotec Industries of Cal. v. Pacific Scientific Co., 381 F.2d 795 (9th Cir. 1967)("That which infringes, if later, will anticipate, if earlier.")

     In the instant case, defendant has failed to establish by clear and convincing evidence that Claim 14 of the '704 patent is invalid.  There is insufficient evidence in the record to determine whether or not the prior-art references cited by the defendant actually anticipate the '704 patent.  For example, defendant contends that Japanese Patent Document 6-36843 ("the 6-36843 Patent") anticipates Claim 14 of the '704 patent because it discloses a golf bag with a dual strap carrying system in which that attachment points for the straps are longitudinally spaced.  There is no evidence, however, that the bag and strap disclosed in the 6-36843 Patent can be used to carry the bag in a transverse manner across the back of a user, a limitation present in Claim 14 of the '704 Patent.  Although defendant *argues* that the bag may be

carried in such a manner by simply adjusting the length of the straps of the bag, there is no *evidence* that such manipulation of the straps would allow the bag to be carried transversely across the back. Similarly, Claim 14 of the '704 patent requires that the first attachment location for a strap must be proximate the open end of the bag. It is not clear, however, as a matter of law or fact, that the first attachment location on the bag disclosed in 6-36843 Patent is located "proximate" the open end of the bag.

With respect to Japanese Patent Document 50-149169, defendant has failed to establish by clear and convincing evidence that the bag disclosed in that patent can be carried transversely across the back of the user, or whether the bag utilizes four attachment points, as required by Claim 14 of the '704 Patent. As to Japanese Patent Document 57-159070, defendant has failed to demonstrate by clear and convincing evidence that the bag disclosed in that patent can be carried transversely across the back, utilizes four attachment points, or employs the use of a first attachment point that is proximate the open end of the bag.

Finally, with respect to the two United States Patent references, defendant has failed to present clear and convincing evidence that the bag disclosed in U.S. Patent 2,853,111, (the "Williams Patent") can be carried over either one shoulder or both shoulders as required by Claim 14 of the '704 Patent, and whether the strap attachment points on the bag are longitudinally spaced.

With respect to U.S. Patent 4,953,768, ("the Muse Patent" or "Muse") defendant argues that if the court adopts plaintiff's arguments with respect to considering the strap ends of the new-style King Par bag to be securing means rather than strap ends, then the Muse Patent invalidates Claim '14 of the '704 Patent. However, because the court has not adopted plaintiff's position, defendant's arguments do not establish that the '704 Patent is invalidated by Muse.

  B. <u>Obviousness</u>.

Although defendant did not move for summary judgment on the issue of obviousness, defendant now seeks permission to brief the issue of obviousness to the court, and have the court consider granting defendant summary judgment on grounds that the '704 Patent is obvious in light of prior art. In support of this argument, defendant contends that the recently decided case of <u>KSR International Co. v. Teleflex, Inc., et al,</u> 550 U.S. _____ (2007) has significantly changed the law with respect to "obviousness," and that while an obviousness defense in this case may have been tenuous before <u>KSR</u>, it is now meritorious.

The Supreme Court's unanimous decision in <u>KSR</u> has been described by commentators as "one of the most significant patent rulings in decades" representing a "sea change" in patent law turning established precedent "upside down." <u>See</u> Charles Emerick,

<u>Missouri Patent Ruling not Obvious to All</u>, Missouri Lawyers Weekly, May 14, 2007; Robert C. Sheinfeld and Parker H. Bagley, <u>Key Decisions from Supreme Court, Federal Circuit</u>, New York Law Journal, May 23, 2007 (describing <u>KSR</u> decision as one of several marking a sea change in patent law); Correy Stephenson, <u>U.S. Supreme Court Turns Patent Law Upside Down</u>, South Carolina Lawyers Weekly, May 28, 2007.  Several commentators have suggested that under the new precedent set forth in <u>KSR</u>, it will become harder to obtain a patent, and easier to invalidate a patent on grounds of obviousness.  Edward Rice and Marina Saito, <u>Recent Patent Law Changes: Good or Bad for Business</u>, 15 Metropolitan Corporate Counsel 6 (June 2007); Xenia Kobylarz, <u>The Reset Button: Recent Supreme Court Decisions Mean More work for Patent Lawyers</u>, 29 American Lawyer 6 (June 2007); <u>U.S. Supreme Court Turns Patent Law Upside Down</u>, South Carolina Lawyers Weekly, May 28, 2007.

Because <u>KSR</u> has substantively changed the law of obviousness with respect to the validity of a patent, defendant should be allowed to present an obviousness defense to the court if it so chooses, and leave to file a motion for summary judgment on the issue of obviousness is granted.  Such a motion, if it is to be made, shall be filed no later than 60 days from the date of this Decision and Order.

<u>CONCLUSION</u>

For the reasons set forth above, I grant in-part and deny in-part defendant's motion for summary judgment.  I find that the new-style King Par bag does not infringe upon the '704 Patent, and accordingly, I grant defendant's motion on that claim.  I find that the old-style King Par bag does infringe upon claims 1, 2 and 14 of the '704 patent, and therefore deny defendant's motion for summary judgment with respect to that claim.  Finally, I deny defendant's motion for summary judgment on the issue of the validity of Claim 14 of the '704 Patent.


ALL OF THE ABOVE IS SO ORDERED.


S/ Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge


Dated:    Rochester, New York
          July 5, 2007