UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IZZO GOLF, INC.,
F/K/A Dancorp Investors, Inc.,

                    Plaintiff,

                                              02-CV-6012T
                                              **DECISION**
          v.                                  **and ORDER**

KING PAR GOLF INCORPORATED,
d/b/a Knight Golf Company,

                    Defendant.

_____

## <u>INTRODUCTION</u>

Plaintiff Izzo Golf, Inc., ("Izzo") brings this action pursuant to federal patent law, (codified at 35 U.S.C. § 100 et. seq.), claiming that defendant King Par Golf, Incorporated ("King Par") has infringed Izzo's United States Patent No. 5,042,704 (filed March 23, 1990)(hereinafter "the '704 patent"), by manufacturing and selling golf bags with straps for carrying the bags that infringe upon claims 1, 2, 7, 8, 11 and 14 of the '704 patent. The '704 patent, entitled "Dual Strap Carrying System for Golf Bags" generally discloses a strap designed to evenly distribute the weight of a golf bag across both shoulders of the person carrying the bag. The strap system can also be used to carry a golf bag across only one shoulder.

By Order dated July 5, 2007, I granted in-part and denied in-part defendant's motion for summary judgment on the issue of infringement. Specifically, I held that one of the defendant's golf bags at issue (the "new style" bag), does not infringe upon

the '704 patent.  I further held that the defendant's "old style" bag infringes upon claims 1, 2, and 14 of the '704 patent.

Defendant now moves for summary judgment against the plaintiff on the issue of the validity of the '704 patent.  Specifically, King Par contends that the plaintiff's invention, as disclosed in Claims 1, 2, 7, and 14 of the '704 patent, is obvious in light of the prior art, and therefore, is invalid.  For the reasons set forth below, I deny defendant's motion for summary judgment.

## BACKGROUND

### I.   The Patented Invention

As stated in my July 5, 2007 Decision and Order, the '704 patent in general:

> discloses a dual strap carrying system for golf bags.  The crux of the invention is the utilization of two straps to carry the bag across both shoulders, rather than the use of a single strap (as traditionally found on golf bags) to carry the bag over a single shoulder. By carrying the bag across both shoulders instead of one, the weight of the bag is more evenly distributed across the entire back of the person carrying the bag, and the person carrying the bag experiences less strain and muscle fatigue which typically occurs when the entire weight of the bag is imbalanced, and borne by only one shoulder.

July 5, 2007 Decision and Order at p. 2-3

I further noted that:

> Although the strap disclosed in the '704 Patent is designed to be used for carrying a bag over both shoulders, a feature of the invention is that because of its design, it can also be utilized to carry the bag over a

>single shoulder if the user prefers to carry
>his or her bags in the more traditional
>method. '704 Patent at col. 2, lns. 43-45.
>Another important feature of the strap is that
>because of its design, it can be retro-fitted
>to work with existing, traditional golf bags.
>'704 Patent at col. 2, lns. 32-36.

July 5, 2007 Decision and Order at p. 3

II.   Patent Claims at Issue.

King Par contends that claims 1, 2, 7, and 14 are invalid as
obvious in light of prior art.   Claim 1 of the '704 patent
discloses:

>In a golf bag adapted to receive a set of golf
>clubs which each have a club head and an
>elongated shaft, said golf bag being in the
>form of an elongated tube including a
>surrounding sidewall, a closed end and an open
>end whereby the shafts of said golf clubs may
>be longitudinally inserted into said golf bag
>through the open end so that said golf clubs
>are stored in a position with the club heads
>projecting out of said golf bag proximate the
>open end, the improvement comprising a strap
>assembly adapted to permit a person to carry
>said golf bag on either or both shoulders,
>said strap assembly including a single strap
>comprising a first strap portion including a
>first central pad, a first strap portion first
>end attached on one end of said first central
>pad and a first strap portion second end
>attached on another end of said first central
>pad whereby said first strap portion has a
>first strap first end secured to said golf bag
>at a first location proximate said open end
>and a first strap portion second end secured
>to said golf bag at a second location axially
>spaced from the first location so that said
>first strap portion defines a first strap
>portion opening, and including a second strap
>portion including a second central pad, a
>second strap portion first end attached on one

end of said second central pad and a second
strap portion second end attached on another
end of said second central pad whereby said
second strap portion has a second strap
portion first end secured to said golf bag
proximate the second location and having a
second strap portion second end secured to
said golf bag at a third location axially
spaced from the second location between the
second location and said closed end to define
a second strap portion opening, said first and
second strap portions being sized so that one
arm of the person can be inserted through the
first strap portion opening and another arm of
the person can be inserted through the second
strap portion opening whereby said golf bag
may be supported by said first strap portion
extending across one shoulder of the person
and by said second strap portion extending
across another shoulder of the person.

Claims 2 and 7 of the '407 patent are dependent claims.  Claim

2 discloses:

The improvement according to claim 1 wherein
said first and second central pads are arcuate
in configuration so that, when said golf bag
is supported, each of said central pads
extends upwardly from the second location,
forwardly across the shoulders of the person,
downwardly and outwardly from the shoulders
and then rearwardly to the first and third
locations respectively.

Claim 7 discloses:

The improvement according to claim 1 wherein
one of said first and second central pads has
a covering that is constructed of material
that resists sliding with respect to clothing
of a person.

Finally, Claim 14 of the '704 patent discloses:

In a golf bag to be carried by a person, a
golf bag having an elongated enclosure
including a surrounding sidewall, a closed end

and an open end whereby golf clubs may be
inserted lengthwise into said golf bag through
the open end, the improvement comprising:

a shoulder strap assembly disposed externally
of said sidewall including first and second
strap members, each of said strap members
having opposite ends;

first and second securing means for securing
each of said opposite ends of said first strap
member to longitudinally spaced locations on
said sidewall including a first location
proximate said open end and a second location
longitudinally spaced from said first location
whereby said first strap member defines a
first strap opening through which one arm of
the person can be inserted; and
third and fourth securing means for securing
each of said opposite ends of said second
strap member to longitudinally spaced
locations on said sidewall to define a second
strap opening that another arm of the person
can be inserted through said second strap
opening whereby said golf bag can be
selectively supported on one shoulder by said
first strap member to incline downwardly
across the back of the person carrying said
golf bag and can be selectively supported on
both shoulders by said first and second strap
members with said golf bag extending
transversely across the back of the person
carrying said golf bag.

## DISCUSSION

I.   Defendant's Motion for Summary Judgment

A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides

that summary judgment "should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."   When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. <u>Scott v. Harris</u>, _____ U.S. ___, _____; 127 S.Ct. 1769, 1776 (2007) . If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. <u>Scott</u>, _____ U.S. at _____; 127 S.Ct. at 1776 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587.

   B.   <u>Standard for determining obviousness</u>

   In accordance with patentability requirements set forth in 35 U.S.C. § 103, a patent claim may be determined invalid if it is found to be "obvious" in light of prior art. A claim is obvious if the patented invention would have been obvious to a person having ordinary skill in the art to which the subject matter of the patent pertains, at the time the invention was disclosed. <u>KSR International Co. V. Teleflex Inc.</u>, _____ U.S. _____, _____ ; 127 S.Ct. 1727, 1734 (2007)(<u>citing</u> 35 U.S.C. § 103). <u>See also Glaxo Group Ltd. v. Apotex, Inc.</u>, 268 F.Supp.2d 1013, 1031 (N.D. Ill. 2003)("patent claim is invalid for obviousness where the differences between the subject matter patented and the prior art are such that the subject matter as a whole would have been obvious

to a person having ordinary skill in the art at the time the invention was made")

Whether or not a claim is obvious in light of prior art is a legal conclusion, but one which is premised on factual findings. Beckson Marine v NFM Inc., 292 F.3d 718 (Fed. Cir. 2002); Miles Laboratories, Inc. v. Shandon Inc., 997 F.2d 870 (Fed. Cir. 1993). Although the determination of whether or not a claim is obvious requires factual determinations, those issues may nevertheless be resolved on a motion for summary judgement where there are no material facts in dispute. See Sibia Neurosciences, Inc. v. Cadus Pharm. Corp., 225 F.3d 1349, 1359 (Fed. Cir. 2000)(granting summary judgment on issues of obviousness).

While a patent may ultimately be declared invalid by a court of law, there is a legal presumption that a patent issued by the Patent Office is valid. Ruiz v. A.B. Chance Co., 234 F.3d 654, 662 (Fed. Cir. 2000).  To overcome the presumption of validity, the party seeking to invalidate a patent must present clear and convincing evidence that the patent is invalid. Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1323 (Fed. Cir. 1999).  In ruling on the issue of obviousness, courts are to make explicit findings as to why the claims of a patent are or are not obvious, and may not rely on conclusory statements. KSR International, 127 S.Ct. at 1741 (citing In re Kahn, 441 F.3d 977, 988 (Fed. Cir., 2006).

C.    Defendant has failed to establish by clear and convincing evidence that the invention disclosed in claims 1, 2, 7, and 14 of the '704 patent is invalid as obvious in light <u>of prior art</u>.

In determining whether or not a patent claim is obvious in light of prior art, the court must first determine the scope and content of the prior art. <u>KSR International</u>, 127 S.Ct. at 1734. The court must also determine the level of ordinary skill of a practitioner of the art that is the subject matter of the patent. The court is then required to compare the relevant prior art to the construed claims of the patent at issue.   <u>Id.</u>, <u>See also</u> <u>Key Pharmaceuticals</u>, 161 F.3d at 715.  Based on the prior art, if the patented invention would have been obvious to a person having ordinary skill in the art to which the subject matter of the patent pertains, the patent is invalid. <u>KSR International</u>, 127 S.Ct. at 1734.

A seminal point of law on the issue of obviousness, and one that is particularly germane in this case, is that "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." <u>KSR International</u>, 127 S.Ct. at 1741. "This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." <u>Id.</u> Indeed, if a court were to determine obviousness by simply reviewing the prior art to determine if each

element of the invention could be found in any prior reference, such an analysis would run afoul of the Supreme Court's admonition to avoid "formalistic conception[s]" "rigid rules" and "mandatory formulas. . . ." Id.

1. The Prior Art

The defendant has asserted several prior art references in support of its contention that claims 1, 2, 7, and 14 of the '704 patent are invalid as obvious. The references include U.S. Patents 4,487,347; 2,707,009; 2,820,498; and 2,853,111, and Japanese Patents 6-36843, 50-149169, and 57-149070.[1] In general, each of the prior art references discloses a golf bag, and more specifically, methods and designs for carrying a golf bag.[2] The respective prior art references will be discussed in more detail in Section 3 below.

2. The Level of Ordinary Skill in the Art of Golf Bag Design

I find that there is no particular specialized skill involved in the art of golf bag design as it relates to the patent and prior art at issue. The defendant's expert contends that there is no training, education, or experience that would be necessary for an inventor to design a patent such as the '704 patent. (See

_____

[1] Illustrations from each of the asserted patents are reproduced at Exhibit 1, attached to this Decision and Order.

[2] Defendant has asserted six additional prior art references, to which plaintiff objects. Those references are discussed in Section II, *infra*.

Deposition Transcript of John McGarry at pp. 14-15) Though plaintiff objects to this characterization, Izzo has not set forth any compelling argument to suggest that level of ordinary skill involved in the art of golf bag design requires any formal training, education, or experience.  Rather, as the defendant's expert opined, the level of ordinary skill involved in the art at issue is equivalent to that of a "backyard inventor"–a person who "saw a problem and found a solution to it, a simple mechanical solution."  Id. at 15.  I adopt this characterization of the level of ordinary skill involved in the art that is the subject matter of the '704 patent.

     3.    The Prior Art References do not render Claims 1, 2, 7, or 14 of the '704 Patent Obvious.

    a.    Claim 1 of the '704 Patent is not obvious

King Par claims that Claim 1 of the '704 patent is rendered obvious by prior-art references.  As I stated in my July 5, 2007 Decision and Order:

> Claim 1 of the '704 Patent requires a strap assembly comprised of two strap portions.  The first strap portion is comprised of three elements: a central pad and two strap ends. The first of the three elements is a "central pad."  Attached to one end of the central pad is a strap end known as the "first end" of the strap portion.  Attached to the opposite end of the central pad is a strap end known as the "second end" of the first strap portion.  The first end of the first strap portion is secured to the golf bag at a location near the open end of the bag, and the second end of the first strap portion is secured to the bag at a second location that is "axially spaced" from

the first location.  The strap portion, as
attached, defines a "strap opening" through
which a user's arm can extend, and the strap
and pad can be rested upon the users shoulder.

Similar to the first strap portion, the second
strap portion is comprised of three elements:
a central pad and two strap ends.  Just as
with the first strap portion, attached to the
central pad of the second strap portion is a
strap end known as the "first end" of the
second strap portion.  Attached to the
opposite end of the central pad is a strap end
known as the "second end" of the second strap
portion.  The first end of the second strap
portion is attached to the golf bag at a
location that must be "proximate" the second
attachment location.  The second end of the
second strap portion is secured to the bag at
a third location that is "axially spaced" from
the second location, between the second
location and the closed end of the bag.  The
second strap portion, as attached, defines a
second "strap opening" through which a user's
arm can extend, and the strap and pad can be
rested upon a user's shoulder.

July 5, 2007 Decision and Order at pp. 14-15.

King Par contends that the essential elements of Claim 1 were

well known in the art prior to the invention of the strap disclosed

in the '704 patent.  Specifically, King Par argues that: (1) the

use of two straps to carry a bag over either or both shoulders was

well known in the prior art; (2) the use of straps which attach

length-wise to the golf bag was well known in the prior art; (3)

the sequential placement of strap ends along an axis was well known

in the prior art; and (4) the use of distinct openings defining

separate strap openings was well known in the prior art.  I discuss

these claims *seriatim*.

i. The Use of Two Straps to carry a golf bag over either or
both shoulders.

King Par contends that several patents issued prior to the
invention date of the '704 patent disclosed the use of two straps
to carry a golf bag.  For example, Defendant cites Japanese Patent
6-36843 (hereinafter the '843 patent) as disclosing a golf bag in
which the bag can be carried over one or both shoulders.  Indeed,
Figures 3 and 5 of the '843 patent depict the bag being carried
over both shoulders, and Figure 6 depicts the bag being carried
over one shoulder.  King Par also cites Japanese Patent 149070
(hereinafter the '070 patent) which discloses a bag which contains
a shoulder strap and an "auxiliary" strap.  In the lone depiction
of a person carrying the bag, the bag is depicted as being carried
by both shoulders using each strap.  Presumably, the bag can be
worn over one shoulder using only the shoulder strap, without the
use of the auxiliary strap.  Similarly, Japanese Patent 50-149169,
(hereinafter, the '169 patent) depicts a bag with a single shoulder
strap and an auxiliary belt, that presumably (though not shown) can
be placed over the user's other shoulder to carry the bag over both
shoulders, or can be removed to allow the bag to be carried over
one shoulder.  Finally, King Par cites U.S. Patent 2,853,111
(hereinafter the '111 patent) which depicts a golf bag that
utilizes two straps to carry a golf bag over both of a user's
shoulders.  Although this bag is designed to be carried over two
shoulders, and not one, King bar has submitted photographs

purporting to show that the bag disclosed in the '111 patent can be carried over a single shoulder.

I find that none of these references, either individually or in combination, renders obvious the invention disclosed in Claim 1 of the '704 patent.  Initially, it is important to state explicitly that the inventor of the golf bag disclosed in the '704 patent did not--and did not claim to--invent the first dual-strapped golf bag. Nor did the inventor claim to invent the first dual-strapped golf bag that could be carried over both shoulders.  Accordingly, the fact that several dual strap golf bags exist in the prior art, including bags that can be worn over one or both shoulders as preferred by the user, does not mandate a conclusion that the '704 patent is either obvious or anticipated.  Rather, the inventor of the golf bag disclosed in the '704 patent invented a golf bag that utilized a strap with openings for two shoulders that could be attached to existing golf bags, and which could be used to carry the bag over both shoulders while distributing the weight of the bag evenly across the user's body, and which could be used to carry the bag in the traditional manner, over one shoulder, if the user so desired. July 5, 2007 Decision and Order at pp. 2-3.  Therefore, even if prior art references disclose golf bags or knapsacks that can be carried over one or both shoulders; golf straps that can be retro-fitted onto existing bags; and bags that are carried transversely across the back with the weight of the bag distributed

across both shoulders, such references, standing alone, will not invalidate as obvious the '704 patent unless the defendant can show, by clear and convincing evidence, that a person of ordinary skill in the art would see the improvements or modifications made by the inventor named in the '704 patent as obvious extensions or progressions of the existing art.  KSR International, 127 S.Ct. at 1741.   King Par has not made such a showing.

The Japanese '843, '070, and '169 patents all teach the use of two straps to carry a golf bag in a position that is parallel to the user's body.  That is a significant difference from the method taught by the '704 patent, which teaches the carrying of the bag transversely across the user's back.  When the bag is carried transversely across the back of the user, stabilization and weight distribution of the bag become more problematic.  The '704 patent addresses the issue of weight distribution and stabilization of a transversely-carried bag, whereas the Japanese patents (because they disclose bags which are carried parallel to the user's body) do not.  Accordingly, the court can not say that the design of a two strap shoulder harness as disclosed in the '704 patent is an obvious progression of the Japanese inventions.

Unlike the Japanese patents, the '111 patent discloses a golf bag that utilizes two straps, is carried transversely across the back of the user, and is worn over both shoulders.  The '111 patent differs from the '704 patent, however, in that the '111 patent: (1)

does not disclose a bag that is intended to be carried over a single shoulder; (2) does not teach a strap that can be retrofitted to existing bags; and (3) utilizes attachment points that are placed circumferentially on the bag, not axially spaced as in the '704 patent.  These differences are significant, and do not suggest the strap disclosed in the '704 patent.  See <u>KSR International</u>, 127 S.Ct. at 1740 ("If a person of ordinary skill can implement a predictable variation [of the prior art], § 103 likely bars patentability.") The '111 patent teaches a dual strap that can only be effectively worn over both shoulders, and the '111 patent does not suggest the use of a strap that can be worn over one or both shoulders.  The mere fact that it could be carried over one shoulder, albeit in a clumsy and likely uncomfortable manner, does not suggest the strap disclosed in the '704 patent which can be used to carry a bag over either a single shoulder or both shoulders.  Indeed, rather than suggesting the solution taught by the '704 patent, the '111 patent identifies the limitations of prior-art dual-strap bags, and exposes the need for a better carrying mechanism.  Additionally, unlike the strap disclosed in the '111 patent, the strap disclosed in the '704 patent is capable of being retro-fitted to a traditional golf bag.  That innovation has significant commercial ramifications because unlike the strap disclosed in the '111 patent, which can not be retro-fitted to existing bags, the strap of the '704 patent can be used with

traditional bags, which results in a much broader commercial market for the strap.   Prior to the '704 patent, no inventor had devised a strap that could be used with traditional bags, but which also allowed the user to carry the bag transversely over both shoulders, or over one shoulder in the traditional manner.[3]   Thus the accomplishment embodied in the '704 patent was no mere variation of the existing art, but was instead, a novel solution that incorporated the commercial interest of creating a strap that could be used with most existing golf bags, and the practical interest of evenly distributing the weight of a golf bag across two shoulders, or allowing the user to carry the bag in the traditional manner over one shoulder.

    ii.   <u>The Use of straps which attach length wise to a golf bag</u>.

    Just as the '704 patent did not disclose the first dual strap golf bag, the '704 patent was not the first patent to disclose the use of a golf strap attached lengthwise to a golf bag.   The '704 patent did, however, disclose the novel improvement of a dual-strap that could be retrofitted to an existing golf bag, and which allowed the user to carry the bag transversely across the user's back with the weight of the bag evenly distributed over two shoulders, or over one shoulder in the traditional method.

---

    [3] Although U.S. Patent 4,487,347 (hereinafter the '347 patent) (discussed *infra* at note 4) teaches a dual-strap system that can be retro-fitted to existing bags and which allows the bag to be carried transversely by the user, the strap is not designed to allow the bag to be carried over a single shoulder.

Accordingly, references such as the '843, '169, and '070 patents--all of which disclose dual-strap golf bags which allow a user to carry the bag parallel to the user's body--neither anticipate the strap disclosed in the '704 patent, nor do they render the strap of the '704 patent obvious.  The innovation of carrying the bag transversely across the user's back is not suggested by the straps disclosed in the '843, '169, and '070 patents, and the weight distribution problems raised by carrying the bag transversely across a user's back are neither addressed nor foreseen by those patents.

King Par asserts that the '498 and '009 patents render the plaintiff's patent obvious because those patents disclose a dual strap golf bag in which the strap is attached longitudinally to the golf bag.  Further, the strap of the '498 can be retro-fitted to an existing bag.  The straps of the '498 and '009 patents, however, are not designed to allow the bag to be carried over both shoulders, and are not designed to allow the bag to be carried transversely across the user's back-innovations that are not suggested by the '498 or '009 patents.

iii. <u>The sequential placement of strap ends along an axis</u>

King par contends that the sequential placement of strap ends along an axis was well known in the art prior to issuance of the '704 patent, and therefore, the '704 patent is obvious in light of that art.  In support of this argument, defendant notes that the

'009, 498, 169, and '070 patents all disclose strap ends that attach along an axis of the bag.  None of those patents, however, discloses or suggests a bag which is designed to be carried transversely across the user's back, with the weight of the bag distributed evenly across the shoulders.

    iv.  The use of separate openings each defining an opening for the arm of the user.

King Par contends that the use of two separate strap openings, with each strap opening defining an area into which the arm of the user can be inserted, is well known in the prior art, and as a result, the '704 patent is obvious in light of that art. Specifically, defendant asserts that the '169, '843, '070, '111, and '347[4] patents all teach the use of separate strap openings for a user's arm.

There is no doubt that prior art teaches the use of golf bags (and other bags such as backpacks) that can be carried over two shoulders and therefore, utilize two separate strap openings for the arms and shoulders of the user.  As such, this particular

---

[4] The '347 patent discloses a dual-strap method for carrying a golf bag transversely across the user's back.  The two straps are attached to a rigid bar, and the bar is attached to a golf bag at the points at which a traditional strap would be attached. As such, the '347 patent discloses a dual strap that can be retro-fitted to existing bags which allows the user to carry the bag transversely across the user's back, with the weight of the bag distributed to both shoulders.  While these features are also found in the '704 patent, the strap disclosed in the '704 patent, (unlike the strap disclosed in the '347 patent) allows the user to carry the bag either over both shoulders, or in the traditional manner, over one shoulder.

element is not novel.  That it may have been "obvious", however, to design a golf bag with two straps for the purpose of allowing the user to carry the bag over both shoulders, does not result in a finding that the use of such a device in the '704 patent renders the '704 patent invalid as obvious.  As stated above, the '704 patent utilizes a dual strap system in a way that had not been seen in prior art.  The strap of the '704 patent: can be retro-fitted to an existing bag; allows the user to carry the bag over both shoulders, or, if so desired, over only one shoulder; allows the bag to be carried transversely across the user's back, and distributes the weight of the bag evenly across the user's shoulders.  The combination of these elements–some of which were known in the prior art–resulted in a novel strap and method for carrying a golf bag, and the mere fact that the '704 patent discloses the use of two straps that can be positioned over both shoulders does not render the strap obvious.

 b. <u>Claims 2 and 7 of the '704 Patent are not obvious</u>

Claims 2 and 7 of the '704 patent are dependant claims of independent Claim 1.  Because I find that Claim 1 is not obvious in light of the prior art, I find that Claims 2 and 7, cannot, as a matter of law, be obvious.

 c. <u>Claim 14 of the '704 Patent is not obvious</u>

In my July 5, 2007 Decision and Order, I explained the differences between independent claims 1 and 14 of the '704 patent. Specifically, I held that:

> Like Claim[] 1 . . . of the '704 patent, Claim
> 14 of the '704 patent claims a dual strap
> system for carrying a golf bag.  Claim 14,
> however, does not require the use of
> attachment points that are axially spaced.
> Rather, Claim 14 discloses the use of
> attachment points that are longitudinally
> spaced.  Longitudinally spaced attachment
> points are points that are "spaced lengthwise
> along the golf bag, without regard to being
> positioned in relation to an axis." <u>Markman</u>
> Ruling at p. 13.

July 5, 2007 Decision and Order at p. 29.

King Par contends that Claim 14 is rendered obvious by the '843 and '169 patents, because those patents disclose dual strap bags with longitudinally spaced straps.  However, for the same reason that these patents do not invalidate Claim 1 of the '704 patent, these patents do not invalidate Claim 14.  The '843 and '169 patents disclose a bag that is carried parallel to the user's body, not transversely across the user's back.  Accordingly, these references do not suggest the innovations found in Claim 14 of the '704 patent, which discloses the use of longitudinally spaced straps that allow the user to carry the bag transversely across the users back with the weight of the bag evenly distributed over both shoulders.

King Par further contends that the '111 patent renders Claim 14 obvious because the '111 patent discloses a dual-strap system that, with little effort or ingenuity, could be modified to encompass the elements of Claim 14.  Specifically, King Par asserts that a person skilled in the art with knowledge of the attachment

points of the straps disclosed in the '111 patent (which are spaced circumferentially around the bag) could easily modify those straps by spacing them in a longitudinal manner.  King Par contends that because the '111 patent suggests the modification disclosed in Claim 14 of the '704 patent, that claim is obvious.

As stated above, however, I find that the '111 patent does not suggest the innovation of using a dual strap system that can be used to carry a golf bag over both shoulders, or, if the user so wishes, over a single shoulder.  The strap of the '111 patent is not designed to be used to carry a golf bag over one shoulder.  The '704 patent, however, allows the user to carry the bag in a traditional manner, or, if the user so chooses, over both shoulders.  That this innovation is different and useful is demonstrated by the commercial success of the strap disclosed in the '704 patent.

It is well recognized that the commercial success of a patented invention may constitute objective evidence of the patent's nonobviousness.  In re Rouffet, 149 F.3d 1350, 1355 (Fed. Cir., 1998).  In this case, there is no dispute that the strap of the '704 patent has enjoyed substantial commercial success, having been licensed to several major manufacturers, and having generated millions of dollars in royalties.  See Declaration of James Kar (filed Nov. 6, 2007) at ¶ 5.  Unlike the strap disclosed in the '111 patent, which did not enjoy commercial acceptance or success,

the strap of the '704 patent is used in approximately 40% of the stand-bag market, (Id.) and has been recognized as a significant innovation in the golfing community. See Declaration of James Kar (filed Nov. 6, 2007) at ¶ 4. I find that based on the significant difference in the function of the strap disclosed in the '704 patent as compared to the strap of the '111 patent, and the commercial success of the strap of the '704 patent in comparison to the lack of such success of the '111 patent, the '111 patent does render Claim 14 of the '704 patent invalid because of obviousness.

II. Plaintiff's motion to Strike.

In support of its motion for summary judgment on the issue of obviousness, defendant cites several prior art references that were not disclosed during discovery. Specifically, King Par cites U.S. Patents 3,622,056, 2,665,727, 3,435,867, 4,879,768, as well as Australian Patent 21,419/35, and Australian Patent Application 8606-593-A. Plaintiff moves to strike references to these patents on grounds that because the references were not disclosed by the defendant as references that would be relied on in proving obviousness or anticipation, the defendant may not now assert them as prior art. Plaintiff contends that it has been prejudiced by the defendant's sudden assertion of these patents because plaintiff has not had an opportunity to have its experts review the references, nor has plaintiff been able to engage in discovery

(including deposing the defendant's experts) with respect to the subject matter of the references.

Defendant contends that because of the state of the law as it existed during the discovery period in this case, the asserted references were not relevant, and therefore, they were not disclosed to the plaintiff. Defendant contends that the references became relevant only after the KSR International decision was rendered on April 30, 2007, well after discovery closed, and therefore the references were not disclosed prior to that time.

I find that defendant was required to disclose the references at issue during discovery. While the KSR International decision clarified the standard to be used in determining obviousness, the Court did not substantially change the law with respect to obviousness, but simply reaffirmed its longstanding admonition that courts must employ "an expansive and flexible approach" when determining issues of obviousness. KSR International, 127 S.Ct. at 1739. Indeed, the Court did not invalidate the "teaching, suggestion, or motivation" test used by the Court of Appeals, but instead found that the court had applied the test too rigidly. KSR International, 127 S.Ct. at 1746. Because KSR International did not fundamentally alter obviousness analysis, it can not serve as a justification for asserting previously undisclosed prior references as invalidating prior art. Accordingly, I grant plaintiff's motion to strike.

<u>CONCLUSION</u>

For the reasons set forth above, I deny defendant's motion for summary judgment on the issue of validity.  I find that Claims 1, 2, 7 and 14 are not obvious in light of the prior art, and therefore, I find those claims to be valid. I grant plaintiff's motion to strike, and strike defendant's references to patents and other references that were not disclosed to the plaintiff during discovery as references relied upon by the defendant to establish invalidity of the '704 patent.


ALL OF THE ABOVE IS SO ORDERED.


S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge


Dated:    Rochester, New York
          June 16, 2008

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IZZO GOLF, INC.,
F/K/A Dancorp Investors, Inc.,

                Plaintiff,

                                    02-CV-6012T
**EXHIBIT 1**

        v.

KING PAR GOLF INCORPORATED,
d/b/a Knight Golf Company,

                Defendant.

_____

## Figures 3 and 5 of U.S. Patent 4,487,347



FIG. 3



FIG.5

**Figure 1  of U.S. Patent 2,707,009**



**Figures 1 and 2 of U.S. Patent 2,820,498**



**Figures 1, 2  and 3 of U.S. Patent 42,853,111**



INVENTOR:
ANNA K. WILLIAMS,

BY:  Martin J. Carroll

her Attorney.

## Figures 1 through 6 of Japanese Patent 6-36843



**Figure 1 of Japanese Patent 50-149169**



**Figure 2 of Japanese Patent 57-149070**

